IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   CRIMINAL NO. 15-CR-00231-KD-N-1 |
| | ) |
| WILLIE JAMES HENRY | ) |

**ORDER**

This matter is before the Court on Defendant's motion to suppress. A hearing on this matter was held January 14, 2016 before the undersigned.[1] The United States was represented by Assistant United States Attorney Gloria Bedwell.[2] The Defendant and his counsel, Paul Brown, were also present. For the reasons discussed herein, the motion to suppress is **DENIED**.

I.   Background

In August 2015, Mobile Police Department detectives were investigating several robberies that took place in July and August 2015. As a result of their investigation, they determined that the robberies were likely connected. This conclusion was based on the fact that in each of the robberies, a black male wearing a hat, sunglasses, and black shirt with a white stripe entered a gas station with a handgun, and demanded money. On a fifth occasion, a person matching this description, wearing these items, and carrying a handgun entered a gas station, but the employee was in the restroom, so the robber exited without completing a robbery. The last robbery under investigation occurred on August 20, 2015.

On August 21, 2015, local news displayed photographs of the suspect taken from robbery surveillance footage. After the broadcasts, police received an anonymous tip via telephone. The

---

[1] For the reasons set forth on the record, Defendant's motion for a *Franks* hearing was **DENIED**.
[2] Detectives Deon Thornton and John Walstad were assigned to the investigation and Detective Thornton testified on behalf of the government at the suppression hearing.

caller identified the suspect in the photographs as Willie Henry. The caller gave a physical description, date of birth, and said that Henry was employed by Empire Scaffolding.

After receiving this information, the police generated a photo spread including Henry's picture. Upon review of the spread, one of the robbery victims identified Henry as the robber. Two other victims were shown the spread, but neither identified the person who robbed them.

On August 24, 2015, detectives spoke with Empire Scaffolding Regional Manager Jay Kemp and Foreman Taylor Hardy. Detectives confirmed that Henry was employed by Empire Scaffolding and learned that the job site he was assigned to at the time was in Brewton, Alabama, which is over an hour away from Mobile. Detectives also learned that Henry carpooled with Hardy from the Mobile area.

From their conversation with Hardy, detectives learned that three or four days before the interview, Henry asked Hardy if they could change their carpool meeting location to the Academy store parking lot ("Academy") on Montlimar Drive in Mobile, Alabama.[3] Henry told Hardy that his child was sick and that he was now living near the Academy to be with her.[4] Hardy also told detectives that Henry left his blue Chevrolet Cavalier at Academy while they were at the job site.

On August 24, 2015, detectives went to the Academy to await Henry's arrival from the carpool. While there, they observed a blue Chevrolet Cavalier in the parking lot and determined that it was registered to Henry, at an address on Opp Avenue.[5] They waited until Henry arrived at the parking lot, entered his car, and drove away. Detectives followed him to the Seabreeze

---

[3] Prior to meeting at the Academy, Henry and Hardy had been meeting at the Saraland, Alabama Wal-Mart.
[4] Henry's affidavit, submitted in support of the his motion, states, "On August 21, 2015, I called Taylor Hardy to request that we move the location for us to meet for me to go to the job site in Brewton and *told him* that I needed to change the location because my child was sick and I was going to be ***living in*** a new location." (Doc. 22-1 at 3, emphasis added). This is consistent with what Hardy told detectives with regard to Henry living near the Academy.
[5] The Opp Avenue address is closer to the Saraland Wal-Mart location where Henry and Hardy had previously been meeting to carpool.

Apartments, which Detective Thornton testified was about 2 miles from the Academy.[6] Henry exited the car and entered apartment 313A. Detective Thornton testified that Henry did not knock or hesitate before entering the apartment, but could not remember whether Henry used keys to enter.

The next day, August 25, 2015, detectives submitted an affidavit to a state court judge and obtained a warrant to search the apartment. Before executing the search warrant, the detectives learned from the apartment manager that Henry was not listed on the lease of apartment 313A.

The apartment was searched and, among other things, detectives recovered several firearms. Henry was indicted based on an alleged violation of 18 U.S.C. § 922(g)(1).[7]

II.     Analysis

Henry moves for suppression of the evidence seized as a result of the warrant executed at apartment 313A. Initially, and as discussed at the hearing, the affidavit submitted in support of the search warrant contained sufficient basis for probable cause that Henry had committed the robberies in question based on the positive identification of the Henry's photograph by one of the robbery victims and the anonymous tip.

However, the affidavit lacked probable cause to support a search of the apartment due to its failure to sufficiently link the Defendant with the searched apartment. The government has conceded the latter in its response to Henry's motion to suppress. (Doc. 18). Despite this defect, the government contends that the *Leon* good faith exception, as established in *United States v. Leon,* 468 U.S. 897 (1984), is applicable here.

---

[6] The Opp Avenue address to which Henry's car was registered, is approximately 7 miles from the Academy.
[7] Henry was initially arrested on state charges of robbery and jailed for 53 days. During his incarceration a robbery occurred which was consistent in detail to the prior robberies. The state charges against Henry were dismissed.

> The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution. *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The exclusionary rule, as it is known, is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). One exception to this exclusionary rule is the *Leon* good faith exception.
>
> *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause. The *Leon* good faith exception applies in all but four limited sets of circumstances. *Id.* at 923, 104 S.Ct. 3405. The four sets of circumstances are as follows: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* (internal quotation marks omitted).

*United States v. Martin*, 297 F.3d 1308, 1312-13 (11th Cir. 2002)(footnote omitted). Before the Court examines "whether the *Leon* good faith exception applies in this case, [it] must determine whether this case fits into one of the four limited sets of circumstances where the *Leon* good faith exception does not apply." *Id.* at 1313.

Defendant argues that the *Leon* good faith exception should not apply as "the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[8] *Id.* (internal quotations and citations omitted). Defendant states "…[A] reasonably well-trained officer would have known that the affidavit failed to establish probable cause as to the essential 'nexus' element of probable cause." (Doc. 13 at 7).

---

[8] The Court explained on the record why the other three circumstances are inapplicable to the facts of this case.

The Eleventh Circuit has provided guidance with regard to *Leon* and good faith:

> Our reading of *Leon* persuades us that the proper test is whether the *officer* acted in objective good faith under all the circumstances. The focus in *Leon* is on the officer. "[T]he officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable...." *Leon,* 468 U.S. at 922, 104 S.Ct. at 3420. The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances ... may be considered." *Id.* at 922 n. 23, 104 S.Ct. at 3420 n. 23. *See also Illinois v. Krull,* 480 U.S. 340, 355, 107 S.Ct. 1160, 1170, 94 L.Ed.2d 364 (1987) ("Nor can a law enforcement officer be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional."); *United States v. Cardall,* 773 F.2d 1128, 1133 (10th Cir.1985) ("the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers")… Thus, we subscribe to a standard which is focused on a reasonably well-trained officer and is based upon the totality of the circumstances. Our standard comports with the language used in *Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23 ("whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization") ("all of the circumstances ... may be considered"), and is also consistent with the purposes underlying the exclusionary rule and the good faith exception, *id.* at 916, 919, 104 S.Ct. at 3417, 3418 ("the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates") (the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity").

*United States v. Taxacher*, 902 F.2d 867, 871-72 (11th Cir. 1990)(emphasis in original).[9] "The 'totality of the circumstances' [the Eleventh Circuit] considered in *Taxacher* included facts not presented to the issuing judge…While not explicitly saying so, *Taxacher* suggest that facts outside the affidavit should be considered." *United States v. Martin*, 297 F.3d 1308, 1319 (11th Cir. 2002)(quoting *Taxacher* at 871-72).

With this in mind, the Court considers all of the information available to the detectives executing the search warrant at apartment 313A. Prior to entering the apartment, the detectives

---

[9] The Court has been unable to locate any reported Eleventh Circuit case where the *Leon* exception was considered and found inapplicable based upon a finding that a warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002)(internal quotations and citations omitted).

knew of a series of robberies or attempts in which a black male wearing a hat, sunglasses, and black shirt with a white stripe entered a gas station with a handgun, and demanded money. They moved forward in their investigation based on an anonymous tip identifying Willie Henry as the suspect and giving his place of employment. After speaking with Henry's employer, detectives learned that Henry had recently changed his carpool location to be closer to where he was living. Detectives waited at the Academy, saw Henry dropped off at his car after work, and followed him to an apartment approximately 2 miles from the drop off location. Once at the apartment, he exited his vehicle, and entered the apartment without hesitation. Thus, there was at least minimal information to believe that Henry resided at this location.[10]

Moreover, the robberies at issue occurred between July 27 and August 20, 2015. The same items of clothing were used in each of the robberies. The apartment was searched August 25, 2015.  It is not entirely unreasonable to expect that the robber would continue to keep these items and would keep these items at his home. Thus, it is not entirely unreasonable for detectives to believe that evidence would be located where the robber resided.

III.   Conclusion

Though the officers did not have sufficient probable cause to link Henry and the apartment to be searched, based on the totality of the circumstances, including all of the information known to detectives, the Court concludes that the detectives "acted in objective good faith, and that the warrant was not so lacking in indicia of probable cause as to render official

---

[10] In supplemental briefing, Henry has cited two cases, both distinguishable, wherein courts in other jurisdictions have held that the good faith exception did not apply because there was no evidence of a connection between the place searched and the defendant. However, in *United States v. Gonzalez*, 399 F.3d 1225 (10th Cir. 2005), there was no evidence indicating that the residence to be searched even belonged to Gonzalez. In *United States v. McNeal*, 82 F.Supp. 2d 945 (S.D. Ind. 2000), the court did not apply *Leon* because the affiant merely concluded that the defendant "controlled" the residence without giving any supporting facts.  The court noted that one such supporting fact could have been that he was observed at the residence.  *Id.* at 952.

belief in the existence of probable cause entirely unreasonable." *Taxacher* at 872. Accordingly, Defendant's motion to suppress is **DENIED**.

**DONE** and **ORDERED** this **21**st day of **January 2016.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**